UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ERIC DUMPEH, | § | |
| | § | |
| Petitioner, | § | CIVIL ACTION NO. |
| v. | § | |
| | § | SA-07-CV-0294 OG (NN) |
| MARK MOORE, District Director of | § | |
| Immigration and Customs Enforcement, | § | |
| San Antonio, Texas; and | § | |
| GEORGE HEAD, Warden, | § | |
| Karnes County Correctional Center, | § | |
| | § | |
| Respondents. | § | |

MEMORANDUM REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE
RECOMMENDING DENIAL OF RESPONDENTS'
MOTION TO DISMISS

To:  Hon. Orlando L. Garcia
     United States District Judge

Pending before me is petitioner Dumpeh's Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2241 (docket entry no. 3).  By previous written Order, I granted petitioner leave to proceed *pro se* (docket entry no. 2).  Petitioner Dumpeh is an alien detainee of the Bureau of Immigration and Customs Enforcement ("ICE") who has been ordered removed from the United States.  Petitioner Dumpeh is presently confined at the Karnes County Correctional Center, in Karnes City, Texas, awaiting his removal.  Petitioner Dumpeh does not challenge the order directing his removal.  Instead he challenges his continued custody by ICE.

I have jurisdiction to enter this Memorandum and Recommendation under 28 U.S.C. § 636(b) and the District Court's referral of all pretrial matters in this proceeding to this Court for disposition

by order, or to aid in their disposition by recommendation where the Magistrate Judge's authority is statutorily constrained.

## I. JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § § 1331 and 2241(a).

## II. STATEMENT OF FACTS and PROCEDURAL HISTORY

Petitioner Dumpeh's A-File or copies of pertinent documents within the A-File were not included with Respondents' motion to dismiss. Instead, Respondents submitted a brief synopsis of the A-File as prepared by an ICE Officer.[1]   Unless otherwise noted, however, the parties do not appear to contest the following relevant facts.

United States Border Patrol apprehended Dumpeh on August 25, 2006.[2]   Although, petitioner Dumpeh claimed (and still claims) to be a native and citizen of Liberia, he was unable to present documentation permitting his entry into the United States. Accordingly, on September 15, 2006, an Immigration Judge deemed Dumpeh inadmissible and processed him for expedited removal pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I).[3]   On November 11, 2006, petitioner Dumpeh was interviewed by the Liberian Consul. According to Respondents' synopsis, "Consul would not issue [travel documents] because he did not believe that Dumpeh was from Liberia. . . .[and] [t]ravel document assistance [was] sent to [ICE Office of Detention and Removal Operations].[4]   On or about November 27, 2006,  Dumpeh applied to the British and German Consulates requesting political asylum. On

---

[1]*See* Docket entry no. 6 at Exhibits 1 & 2.

[2]Neither the petitioner nor respondents indicate where Dumpeh was apprehended.

[3]*See* Docket entry no. 6, Exhibit 1 & 2 at 1-3.

[4]*Id.*

2

November 30, 2006, the British Consulate denied his request.[5]  About that same date, the German

Consulate denied his request.[6]  On December 18, 2006, the synopsis reads: "Dumpeh [was]

interviewed again, regarding [his] family history and residences in Africa.  Dumpeh is adamant

regarding his claim that he is a Liberian citizen."[7]  Three entries are then provided which indicate

ICE conducted a Post Order Custody Review ("POCR") of Dumpeh's case on April 3, 2007, and

served Dumpeh on or about April 9, 2007 with notice that ICE had decided to continue Dumpeh's

detention.[8]  Respondents' motion fails to provide the Court with a  copy of the decision, or indicate

the basis for ICE's decision to continue detention.  On April 26, 2007, John Seright at the ICE

Detention and Removal Headquarters Office was contacted to "assist in obtaining travel documents.

. . .[and] [a]nother interview was set up with [the] Liberian Consulate."[9]  On May 17, 2007, the

Liberian Consulate interviewed Dumpeh and refused to issue travel documents.[10]  The synopsis

further notes, Dumpeh has no family in the United States; he has not been subjected to any

disciplinary actions while detained; and a search in NCIC, the national criminal database, indicates

no warrants exist for Dumpeh.

Finally, in the affidavit attached to the synopsis, the ICE officer, wrote:

---

[5]Docket entry no. 3, Exhibit C at 3-4.

[6]*Id.* Exhibit D at 5-6.

[7]Docket entry no. 6, Exhibits 1 & 2 at 1-3.

[8]*Id.*

[9]*Id.*

[10]*Id.*

Based on statements made by Mr. Dumpeh, the Liberian Consulate did not believe [Dumpeh] was a citizen of Liberia and refused to issue a travel document. The identity of Mr. Dumpeh is still unknown as he has not produced any identity documents. He claims his parents are dead, that he left Liberia at age 7, and that he has lived in the Ivory Coast, Senegal, Gambia, and Venezuela. Yet, he has not produced any documents evidencing his residence in those countries.[11]

On March 31, 2007, after being detained for more that six months, petitioner Dumpeh filed a § 2241 petition. Petitioner Dumpeh does not challenge the order of removal; instead he challenges his continued custody by ICE. Without specifically citing to *Zadvydas v. Davis*, petitioner Dumpeh argues ICE's prolonged custody of his person has become "indefinite" and "unreasonable" and that he is entitled to be released because ICE is taking too long to remove him to his country of origin–Liberia.[12] Process issued in this case. On July 2, 2007, the Respondents filed a Motion to Dismiss (docket entry no. 6). Instead of filing a response to the motion, petitioner Dumpeh submitted a motion regarding the status of his case (docket entry no. 7). Petitioner Dumpeh is still detained by ICE.

### III. STANDARDS

A motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6) "is viewed with disfavor and is rarely granted."[13] A district court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the

---

[11]*Id.*

[12]*See Zadvydas v. Davis*, 533 U.S. 678 (2001) (the post-removal-period detention statute of the Immigration and Nationality Act implicitly limits an alien's detention to a period reasonably necessary to bring about the alien's removal which is presumably six months, and does not permit indefinite detention).

[13]*Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997).

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[14] Stated another way, "[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[15] In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.[16]  In ruling on such a motion, the court cannot look beyond the pleadings.[17]  The pleadings include the complaint and any documents attached to it.[18] Likewise,  "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'"[19] The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid cause of action when it is viewed in the light most favorable to the plaintiff and with every doubt resolved in favor of the plaintiff.[20]  A plaintiff, however, must plead specific facts, not mere

---

[14]*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir.1995).

[15]*Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002) (*quoting Hishon v. King & Spalding*, 467 U.S. 69, 73, (1984)).

[16]*Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

[17]*Id.*

[18]*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir.2000).

[19]*Id.* (*quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)).

[20]*Lowrey*, 117 F.3d at 247.

conclusory allegations, to avoid dismissal.[21]   The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has a legally cognizable claim.[22]

## IV.  DISCUSSION AND ANALYSIS

As noted above, petitioner Dumpeh challenges his continued detention.   On page 6 of his petition he explicitly wrote:

> I am *not* challenging the deportation order.  I have cooperated with the I.N.S. to obtain my travel documents.  I don't want to be incarcerated indefinitely by I.C.E.  I wish to be release[d] on supervision until I am remove (sic) to my country or another country.  I have been detained for more than six months (6 months).  Thank you.[23]

Respondents' Motion to Dismiss urges this Court to dismiss the motion on the grounds that this Court should defer to the Immigration Judge's Order of Removal and because petitioner Dumpeh has not cooperated with ICE and shown that he is not a threat to this country.  I address each of Respondents' arguments in turn.

Despite Dumpeh explicitly stating he was *not* challenging the removal order, Respondents dedicate most of their Motion to Dismiss toward urging this Court to defer to the Immigration Judge's Order of Removal.   Respondents' legal discussion regarding deference is inapplicable and not relevant.   First, the service order and Dumpeh's petition clearly stated Dumpeh was *not* challenging the removal order.   Thus, any discussion regarding the validity of the removal order is unnecessary.   Second, and more importantly, had Dumpeh challenged the order of removal, service would not have issued in this case because this Court would have been without jurisdiction to

---

[21]*Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992).

[22]*United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir.2004).

[23]Docket entry no. 3 at 6.

6

consider Dumpeh's petition as Congress divested the federal district courts of jurisdiction over §

2241 petitions attacking removal orders with the passage of the REAL ID Act[24] on May 11, 2005.

Thus, Respondents' Motion to Dismiss should be denied to the extent it seeks dismissal of the

petition on the ground that Dumpeh challenges the removal order.

To the extent Respondents argue this Court should dismiss Dumpeh's petition because he has

not cooperated with ICE regarding his removal and shown that he is not a threat to this country, I

disagree.  Respondents' claim that Dumpeh has not cooperated with ICE regarding his removal is

belied by the A-File synopsis which indicates petitioner has participated in interviews with the

Liberian Consulate, and he has contacted at least two other countries seeking asylum.  Moreover,

petitioner Dumpeh has sworn he has cooperated, and his claims of Liberian citizenship have been

characterized by the Respondents' own evidence as "adamant."  Thus, absent compelling evidence

to the contrary, Respondents' argument that Dumpeh has not cooperated is not sufficient to support

a Rule 12(b)(6) dismissal at this time.

Insofar as Respondents seek continued detention because Dumpeh has not shown he is not a

threat to this country and they need more time to investigate, continued indefinite detention for

"more time to investigate" is not permitted under *Zadvydas v. Davis* and *Clark v. Martinez*.[25]

Respondents' motion does not provide any legal briefing regarding Dumpeh's indefinite detention

claim.  In fact, Respondents' motion fails to mention or discuss *Zadvydas v. Davis*, and it's progeny,

*Clark v. Martinez*, wherein the Supreme Court extended the constitutional protections of *Zadvydas*

---

[24]Pub. L. No. 109-13, 119 Stat. 231.

[25]*Zadvydas v. Davis*, 533 U.S. 678 (2001); *Clark v. Martinez,* 543 U.S. 371 (2005).

*v. Davis* to inadmissible aliens, like Dumpeh.  Thus, Respondents' Motion to Dismiss should be denied on this basis as well.

In *Zadvydas v. Davis,* the United States Supreme Court considered whether a post-removal detention period could continue indefinitely for a period reasonably necessary to accomplish the alien's removal.[26]  The Supreme Court concluded that an indefinite detainment presented serious constitutional problems and held that ICE could detain an alien pending removal for a period reasonably necessary to accomplish the removal.[27]  The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish an alien's removal, but noted that the presumption

> does *not* mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.[28]

The Court created a burden-shifting scheme for establishing whether continued detention beyond six months is reasonable.[29]  Under the scheme, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."[30]  The Supreme Court provided guidance for the habeas courts by explaining that:

---

[26] 533 U.S. at 682-84.

[27] *Id.* at 688-690.

[28] *Id.* at 701-02 (emphasis added).

[29] *Id.*

[30] *Id.*

8

Whether a set of particular circumstances amounts to detention within, or beyond a period reasonably necessary to secure removal is determinative of whether the detention is or is not pursuant to statutory authority. The basic federal habeas corpus statute grants the federal courts authority to answer that question. . . . In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances. . . .And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement with that reasonable removal period.[31]

The Court observed that detention to prevent flight is a weak or non-existent justification where removal is a remote possibility at best.[32] In *Clark v. Martinez*, the Court extended *Zadvydas*' protections to inadmissible aliens and held that the detention standards announced in *Zadvydas* applied equally to inadmissible aliens.[33]

After the Supreme Court's decision in *Zadvydas*, the government implemented a formal administrative review process, wherein a post-removal order alien may present a claim for release to the immigration agency authorities on the ground that there is no significant likelihood that they will be removed in the reasonably foreseeable future.[34] Upon receipt of the claim the agency will analyze the likelihood of removal and whether "special circumstances" exist that may justify further detention.[35] Such "special circumstances" that may justify further detention include the continued

---

[31]*Id.* at 699-701.

[32]*Id.* at 690-92.

[33]543 U.S. 371 (2005).

[34]8 C.F.R. § 241.13.

[35]*Id.*

detention of aliens with contagious diseases, those whose release would cause adverse foreign policy or terrorism concerns, and those who are determined to be specially dangerous.[36]  An immigration judge has jurisdiction to review the agency's determination.[37]

Dumpeh's detention by ICE exceeds *Zadvydas'* presumptively reasonable six month period of time for the government to accomplish Dumpeh's removal.  Should the District Court accept my recommendation that Respondents' Motion to Dismiss be denied, I will promptly schedule a hearing to determine whether petitioner Dumpeh has availed himself of the formal administrative scheme discussed *supra* and whether Petitioner has shown there is no significant likelihood of his removal in the reasonably foreseeable future, and direct the Respondent to submit detailed legal briefing to show cause why the petition should not be granted.

## V.  RECOMMENDATION

For the foregoing reasons, I recommend that Respondents' Motion to Dismiss (docket entry no. 6) be DENIED.

### Instructions for Service and Notice of Right to Object/Appeal

_____The United States District Clerk shall serve a copy of this Memorandum and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this Memorandum and Recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified

---

[36]8 C.F.R. § 241.14.

[37]8 C.F.R. § 241.14(g).

by the District Court.[38]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.**   A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the District Court.[39]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Memorandum and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[40]

     **SIGNED** on September 20, 2007.


*Nancy Stein Nowak*
_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[38] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[39] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

[40] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).